**Opinion issued August 9, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-12-00497-CV

———————————————

## IN RE CHARLES LEYENDECKER, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

In this original proceeding, relator Charles Leyendecker seeks mandamus review of the trial court's order disqualifying attorney Keith Gross from representing Charles in the underlying suit by Charles's former mother-in-law

seeking custody, or, alternatively, rights of possession and access to Charles's children.[1] We conditionally grant the writ of mandamus.

## Background

Charles is the father of L.L. Real party in interest, Diana Hart, is L.L.'s maternal grandmother. L.L.'s mother passed away in 2006, and Charles has since remarried. Diana brought the underlying suit to obtain custody of or, alternatively, establish rights of possession and access to L.L. and L.L.'s younger sibling.[2]

At the time of the hearing on temporary orders in February 2012, Charles was represented by attorney John Powell but not by Gross. Powell called Gross to testify at that hearing. Gross's testimony established the following three points: (1) Gross had a conversation with L.L. in which L.L. expressed his desire to live with Diana because he was unhappy living with Charles and Charles's new wife; (2) Gross believes that Charles provides a good home for L.L. and that nothing about Charles's parenting presents a risk to L.L.'s emotional or physical well-being; and (3) while Gross had not recently seen Diana visiting L.L. at Charles's home, Gross believes that Diana sincerely cares for and wants the best for L.L.

---

[1] The underlying proceeding is *In the interest of C.L.L. and L.L.*, No. 12FD0398, in the 306th District Court, Galveston County, Texas, the Honorable Janis Yarbrough, presiding.

[2] While the underlying case relates to both of Charles's children, the arguments and evidence regarding the motion to disqualify and this original proceeding relate only to the older of the two children, L.L.

2

After the hearing, the trial court ordered that L.L. live with Diana. Several days later, Gross appeared in the case as lead counsel for Charles and filed a notice of appeal of the trial court's ruling. Shortly after Gross's appearance as Charles's counsel, Diana's counsel told Gross she believed Gross was prohibited from representing Charles because he had testified at the hearing on temporary orders. But Diana did not move to disqualify Gross at that time. Instead, Diana's counsel continued to communicate with Gross about the case (and even attended a mediation session) for approximately eight more weeks without further discussion of the issue, until Gross requested L.L.'s deposition and sought other discovery from Diana. At that time, Diana filed an "Emergency Motion to Disqualify." In her motion, Diana asserted that Gross "testified as a material witness" and therefore "is prohibited by the Texas Disciplinary Rules of Professional Conduct from representing [Charles] in this case." Specifically, Diana asserted that Gross should be disqualified because he "essentially testified that he was [Charles's] best friend, knew the parties for years, and used to hang out with them on numerous occasions." No exhibits, affidavits, or other evidence accompanied the motion. The trial court held an evidentiary hearing on the motion at which Gross and Diana testified and then ruled that Gross be disqualified from representing Charles in the underlying action.

**Discusssion**

Mandamus is appropriate to correct an erroneous order disqualifying counsel because there is no adequate remedy by appeal. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004). When a lawyer is or may be a witness necessary to establish an essential fact, Texas Disciplinary Rule of Professional Conduct 3.08 prohibits the lawyer from acting as both an advocate and a witness in an adjudicatory proceeding. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar R. art. X, § 9). Although Rule 3.08 was "promulgated as a disciplinary standard rather than one of procedural disqualification," Texas courts "have recognized that the rule provides guidelines relevant to a disqualification determination." *See Sanders*, 153 S.W.3d at 56 (citing *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 421 (Tex. 1996)).

The Texas Supreme Court has emphasized that "[d]isqualification is a severe remedy." *Id.* at 57 (quoting *Spears v. Fourth Ct. of App.*, 797 S.W.2d 654, 656 (Tex. 1990)). It can "cause immediate harm by depriving a party of its chosen counsel and disrupting court proceedings." *Id.* Consequently, in considering a motion to disqualify, the district court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory tactic. *Spears*, 797 S.W.2d at 656. "'Mere allegations of unethical conduct or evidence showing a

4

remote possibility of a violation of the disciplinary rules will not suffice' to merit disqualification." *Sanders*, 153 S.W.3d at 57 (quoting *Spears*, 797 S.W.2d at 656).

It is only appropriate to disqualify an attorney due to his status as a potential witness if the attorney's testimony is "necessary to establish an essential fact." *Id.* (quoting TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(a)). The fact that a lawyer serves, or may serve, as both a representative and as a witness does not in itself compel disqualification. *Id.*; *see also In re Garza*, No. 04-11-00835-CV, 2012 WL 556311, at *2 (Tex. App.—San Antonio Feb. 15, 2012, orig. proceeding) (stating disqualification under Rule 3.08 is not appropriate unless party seeking disqualification establishes "a genuine need for the attorney's testimony and that the testimony goes to an essential fact"). Rather, the party requesting disqualification must demonstrate that the opposing lawyer's dual roles as attorney and witness will cause the party actual prejudice. *Ayres v. Canales*, 790 S.W.2d 554, 557–58 (Tex. 1990).

Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct states:

(a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(a). Gross does not contend that any of the exceptions listed in rule 3.08 apply in this case. Thus, the issue is whether Gross's testimony is "necessary to establish an essential fact on behalf of [Gross's] client." Because Diana is the party seeking disqualification, she has the burden to make that showing. *See Sanders*, 153 S.W.3d at 57 (citing *Spears*, 797 S.W.2d at 656).

To prevail in the underlying case in which she seeks custody or rights of possession and access to L.L., Diana bore the burden to prove that Charles's "denial of possession of or access to [L.L.] would significantly impair [L.L.'s] physical health or emotional well-being." TEX. FAM. CODE ANN. § 153.433(a)(2) (West Supp. 2011). But nowhere in her motion to disqualify does Diana identify any essential fact that is both necessary to her case and may be established only through Gross's testimony. Nor does the evidence adduced at the hearing on the

6

motion to disqualify reveal that Gross's testimony is necessary to establish any

essential fact.  Diana testified as follows:

> [Gross]  What fact is necessary for me to establish in this case that on your behalf or [Charles's] behalf, what facts do I have, that you believe that I have, that are necessary to establish either your case or [Charles's] case?
>
> [Diana]  You have the facts that you've talked to [L.L] when he ran away, and right before this all came up, and he spoke to you about wanting to come to my place.
>
> [Gross]  You've identified a conversation.  What facts do I have that I could testify that is necessary to establish the case?  You've mentioned that I talked to him on the phone.  But what facts do you believe or do you have personal knowledge of is necessary for me to testify to that would disqualify me as an attorney?
>
> [Diana]  I can't tell an exact specific fact. . . .
>
> . . . .
>
> There were some things in your testimony that were -- I'm not exactly sure how to say it, but you were at [Charles's] new house like twice a month and never saw me.  At the same time, the only time I went there was to pick the boys up and left.  I wasn't there to socialize.
>
> [Gross]  So is that fact necessary to establish your case or their case?
>
> [Diana]  Yeah.  It was in your testimony when you were the witness.
>
> [Gross]  Have you completely answered my question?  Are there any other facts you would like to introduce to this court that you believe is necessary for you to call me as a witness or for Mr. Leyendecker to call me as a witness?
>
> [Diana] Right at this moment I can't think of any, but I'm fairly certain there will be some questions down the line.

7

Likewise, in his affidavit, which the trial court admitted as an exhibit, Gross averred that he has no knowledge necessary to establish an essential fact in the case and, indeed, that he lacks personal knowledge of facts regarding L.L.'s and the family's present circumstances. He also stated he would not call himself as a witness and added that L.L., Charles, Charles's wife, Diana, and other witnesses will establish the facts necessary to prove or negate the existence of any essential fact.

Despite this record, Diana's response to the mandamus petition urges us to conclude that Gross's disqualification was proper because (1) Gross had a conversation with L.L. in which L.L. said he wanted to live with Diana, (2) Gross testified that he had not recently seen Diana at Charles's house, and (3) Gross testified that there is nothing wrong with the environment and manner in which Charles is raising L.L. Diana argues that this testimony relates directly to issues on which she bears the burden of proof. While these facts may bear some relevance to disputed issues in the case, Diana has made no showing that any of Gross's testimony is *necessary* to establish any essential fact in the underlying case. In particular, Diana made no showing below and makes no argument in this original proceeding that any testimony Gross could provide is not available from another source. *See Sanders*, 153 S.W.3d at 57 (holding trial court did not abuse discretion in denying motion to disqualify because movant made no showing testimony was

8

necessary because it was not available from another source). On the contrary, the record shows various other potential sources of the information about which Gross testified at the temporary orders hearing. For example, L.L. can testify about the conversation he had with Gross and the other facts Diana claims are essential to the case. The record shows L.L. already has testified in great detail about his family's circumstances and the challenges he faces at home and in school. And Charles, his new wife, and Diana can also testify about L.L.'s health and well-being and whether denying Diana access to L.L. would impair them. Finally, L.L.'s medical and psychological records, which apparently have been the subject of discovery, also may contain evidence necessary to establish an essential fact. Because Diana made no showing in the trial court that Gross's testimony was necessary to establish an essential fact, we are not persuaded that Gross's testimony at the temporary orders hearing, under these circumstances, precludes him from continuing to serve as Charles's attorney.[3] *See In re Villasanta*, No. 01-11-00474-CV, 2011 WL 4398557, at \*2 (Tex. App.—Houston [1st Dist.] Sept. 22, 2011, no pet.) (holding trial court abused its discretion in disqualifying attorney because movant did not show that attorney's testimony was only source of evidence for

---

[3] We also note Diana made no showing of prejudice or harm relating to Gross's continued representation of Charles. *See Ayres v. Canales*, 790 S.W.2d 554, 557–58 (Tex. 1990). On the contrary, Diana argues in her response that Gross's testimony helps her case in some respects.

9

disputed issue); *In re Garza*, 2012 WL 556311, at \*3 (same); *In re Bivins*, 162 S.W.3d 415, 421 (Tex. App.—Waco 2005, orig. proceeding) (same).

## Conclusion

We hold that Diana's request for disqualification did not meet the exacting standards by which motions to disqualify opposing counsel must be judged, and that the trial court's order disqualifying Gross from serving as Charles's attorney constitutes an abuse of discretion for which there is no adequate remedy by appeal. Accordingly, we direct the trial court to vacate its order disqualifying Gross from representing Charles in the underlying proceeding. Our writ of mandamus will issue only if the trial court does not comply.

Rebeca Huddle
Justice

Panel consists of Justices Higley, Sharp, and Huddle.